IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LAURA L. FRANTZ,                           )
                                           )
            Plaintiff,                     )
                                           )
      v.                                   )        1:10CV275
                                           )
ERIC K. SHINSEKI, Secretary,               )
Department of Veterans Affairs,            )
                                           )
            Defendant.                     )

ORDER AND MEMORANDUM OPINION

This matter is before the Court on a Motion for Partial Summary Judgment filed by

Plaintiff Laura L. Frantz ("Plaintiff"), and a Motion for Summary Judgment filed by Defendant

Eric K. Shinseki, Secretary of the Department of Veterans Affairs ("Defendant").

I.      FACTUAL BACKGROUND

In December of 2005, Plaintiff, a Registered Nurse, was appointed under 38 U.S.C.

§ 7401(l) to the position of Associate Chief Nurse for Acute Care at the W.G. Hefner Veterans

Affairs Medical Center in Salisbury, North Carolina (the "Salisbury VA" or "Agency").  As

Associate Chief Nurse, Plaintiff held the status of Nurse IV and had approximately 140

employees under her authority.  Plaintiff's responsibilities included supervising the nursing

personnel's implementation of the Salisbury VA programs and policies within her nursing unit.

One such policy involved use of the Bar Code Medication Administration ("BCMA") computer

program to track the medications dispensed to patients at the facility.  To effectuate the BCMA

program, each patient is assigned a wristband with a bar code on it.  The Salisbury VA policy

dictates that when a patient receives any type of medication, VA personnel must scan the

wristband and the bottle containing the medication. Thereafter, the computer system documents in the patient's record that the medication was given to the patient at a specific date and time. At the end of each hour, the computer system is reconciled to document any missed medications.

In December of 2006, the Salisbury VA conducted an investigation known as a "Root Cause Analysis" to determine how and why a patient in Plaintiff's unit received the wrong wristband. The analysis revealed that some nurses in Plaintiff's unit were not following the BCMA protocol. As a result, the medical center director launched a fact-finding investigation into Plaintiff's nursing unit. On January 24, 2007, Plaintiff was removed from her work unit and temporarily reassigned to another project pending the completion of the fact-finding investigation. (Motion to Dismiss Ex. 5 [Doc. # 8-7]).[1] The fact-finding report was issued on February 5, 2007, detailing approximately 300 missed medications over a six month period. (Motion to Dismiss Ex. 7 [Doc. # 8-9]). Plaintiff subsequently began taking sick leave on February 26, 2007, and her doctor, Dr. McEwan, later provided a letter opining that beginning February 28, 2007, Plaintiff was unable to do any work of any kind for six months, due to stress, anxiety, and Post-Traumatic Stress Disorder. (Gov. Ex. CC [Doc. # 66-17]).

On March 26, 2007, Plaintiff's supervisor, Ruth Wheeler, issued Plaintiff a notice of proposed removal, charging her with negligent performance of duties and endangerment of

---

[1] The Government previously filed a Motion to Dismiss in this case while this case was pending in the Southern District of Georgia, and the Motion was denied before venue was transferred to this District. The parties rely on evidence in the record included in the briefing prior to the transfer to this District, so the citations are to that evidence as appropriate.

Veteran patients based on the results of the fact-finding investigation. (Motion to Dismiss Ex. 8 [Doc. # 8-10]). On May 17, 2007, the medical center director, Carolyn Adams, sustained the charges in the notice of proposed removal and removed Plaintiff from federal service, effective June 7, 2007. (Motion to Dismiss Ex. 9 [Doc. # 8-11]). On May 25, 2007, before the removal was effective, Supervisor Wheeler received information from the Department of Labor related to a Worker's Compensation claim filed by Plaintiff with the Department of Labor on May 4, 2007, in which Plaintiff claimed that she could not work due to job-related stress, anxiety, and Post-Traumatic Stress Disorder. As of May 25, 2007, Plaintiff was placed on "authorized absence" or "paid leave." (Frantz Decl. [Doc. #45] at 100). Based upon the removal action, Plaintiff was terminated from employment with the VA on June 7, 2007. Plaintiff contends that she was scheduled to enter upon a new, lateral position with a pay raise at a different facility in Gainesville, Florida on June 11, 2007, but that the removal action caused her to lose the new position.

Pursuant to 38 U.S.C. § 7462(d), Plaintiff appealed her removal from federal service to the Disciplinary Appeal Board ("DAB"). During the pendency of the appeal, Plaintiff requested a copy of all evidence upon which the Agency based the charges leading to Plaintiff's removal. On July 31, 2007, the parties engaged in a pre-hearing conference call with the DAB, wherein it was disclosed that the Agency had failed to provide Plaintiff with all materials and substantive evidence relevant to her removal. On August 3, 2007, after the pre-hearing conference call, but before the scheduled DAB hearing, the Agency informed Plaintiff that, due to procedural error, it was withdrawing Plaintiff's removal. Plaintiff was thus reinstated as an employee, retroactive

to June 7, 2007, and her pay and benefits were retroactively restored. However, Plaintiff contends that she was not fully compensated for all lost pay and benefits for the period from June 7, 2007 until her removal was rescinded on August 3, 2007. After the removal was rescinded, and apparently based on her prior medical request, Plaintiff was placed on paid authorized absence. Plaintiff contends that she was informed by Agency counsel that the charges would be re-filed against her. To date, the Agency has never re-issued the charges, and according to the rescission letter, the charges were to be expunged from her Official Personnel Folder. (Motion to Dismiss Ex. 12 [Doc. # 8-14]). Defendant contends that Plaintiff's record was expunged, that the DAB hearing was cancelled, and that the matter was closed. However, Plaintiff contends that her record was not expunged and that she has been placed by the Agency on the Office of Personnel Action "Adverse Action" list, thus hindering other opportunities.

As noted above, after her removal was rescinded, Plaintiff was placed on paid "authorized absence" leave, apparently based on the letter from Dr. McEwen on May 26, 2007, stating that she could do "no work of any kind" for six months beginning February 28, 2007. Almost a year later, on April 21, 2008, Dr. McEwen submitted a letter supporting her return to work "without restrictions." Based on that submission, the Agency requested a Fitness for Duty Exam. On May 30, 2008, a Fitness for Duty Exam was performed by Dr. Kramer, who found Plaintiff fit to return to duty but recommended that she not work with the same supervisory relationships that she was in conflict with previously. (Motion to Dismiss Ex. 13 [Doc. # 8-15]). Plaintiff remained on paid "authorized absence" leave during this time. In January 2009, Plaintiff was issued a "Return to Duty Letter" giving her three days to return to work.

Upon her return to duty, Plaintiff was named the Bed Management Coordinator at the Salisbury VA. In that position, Plaintiff received the same pay as in her previous position. In addition, Defendant contends that Plaintiff maintained a Nurse IV status, which is the same status as that prior to Plaintiff's removal, although Plaintiff contends that the position was not equal to her prior position and was effectively a Nurse III position. After she returned to work, Plaintiff continued to take extended intermittent leave based on her medical conditions. In addition, Plaintiff contends that she should have been reassigned to a different facility or different supervisors to accommodate her stress and anxiety. Nevertheless, in September 2009, Plaintiff informed the Agency that she was willing to return to work without restrictions. (Gov. Ex. AA [Doc. # 66-15]). However, in October 2009, the Agency offered Plaintiff at least two different alternative Acute Care Nurse (Nurse IV) positions at the Salisbury facility, but Plaintiff subsequently refused those positions and filed the present suit.[2] In December 2010, while this case was pending, Plaintiff's doctor prepared a letter opining that Plaintiff could no longer work due to her anxiety and PTSD. After exhausting her sick leave, Plaintiff was placed on "unpaid leave." Plaintiff is therefore still employed but is presently on "leave without pay."

In the present suit, Plaintiff brings various claims against Defendant related to the Agency's alleged actions during Plaintiff's removal from and subsequent reinstatement with the Salisbury VA. In her Second Amended Complaint, Plaintiff first seeks judicial review of the Agency's actions during the removal and reinstatement period, and requests that the Court find

_____

[2] In October 2009, the positions were offered to Plaintiff as alternative positions available to her, not requiring settlement of the present suit and not made in the context of settlement discussions. (See Decl. of Reaves [Doc. # 49-1]).

as a matter of law that Plaintiff was never returned to the status quo ante following the Agency's rescission of her removal. In addition, Plaintiff's Second Amended Complaint alleges claims for (1) employment discrimination on the bases of race (Caucasian), gender (female), and retaliation, in violation of Title VII; (2) failure to accommodate an alleged disability, in violation of the Rehabilitation Act of 1973; and (3) unlawful use and disclosure of quality assurance records and documents, in violation of 38 U.S.C. § 5705. However, in a stipulation filed on January 4, 2012, Plaintiff dismissed her claims under Title VII and under 38 U.S.C. § 5705. Therefore, the only two claims presently before the Court are Plaintiff's claim for judicial review of an Agency action under 38 U.S.C. § 7462 and Plaintiff's claim under the Rehabilitation Act for failure to accommodate an alleged disability.

Plaintiff originally filed suit on October 15, 2009 in the Southern District of Georgia, where she was living at the time,[3] seeking judicial review of the Agency's actions. Defendant filed a Motion to Dismiss, contending that there was no final agency action to review, and that venue for the case was properly in North Carolina. On April 8, 2010, the Southern District of Georgia transferred the case to this Court and denied the pending Motion to Dismiss without prejudice to consideration by this Court.[4] Plaintiff filed a Motion for Summary Judgment prior to the close of discovery, seeking a determination as a matter of law that she had not been

---

[3] Before taking the position with the VA in Salisbury, North Carolina in December 2005, Plaintiff had worked for the VA in Augusta, Georgia. Plaintiff apparently returned to Augusta at some point while she was on medical leave from the Salisbury VA.

[4] Defendant did not file a subsequent Motion to Dismiss in this District, and did not seek dismissal of Plaintiff's claims until the present Motion for Summary Judgment. Due to extensions allowed to the parties in briefing, Defendant's Motion for Summary Judgment was not referred to the Court until December 2, 2011.

restored to the status quo and that the Agency action should be set aside and further relief determined. After the close of discovery, Defendant filed a Motion for Summary Judgment as to all claims. With respect to Plaintiff's claim for review of an agency action under 38 U.S.C. § 7462, Defendant contends that this claim is not properly before the Court because there is no final agency decision before this Court for review. With respect to Plaintiff's claim under the Rehabilitation Act, Defendant contends that Plaintiff has not established that she was disabled or that the Agency failed to provide a reasonable accommodation. The parties' Motions for Summary Judgment have been fully briefed and are properly before the Court for review.

## II.   MOTIONS FOR SUMMARY JUDGMENT

### A.    Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Zahodnick v. Int'l Bus. Machs. Corp., 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). When making a summary judgment determination, the court must view the evidence and all justifiable inferences from the evidence in the light most favorable to the non-moving party. Zahodnick, 135 F.3d at 913. However, the party opposing summary

judgment may not rest on mere allegations or denials, and the Court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." <u>Evans v. Technologies Applications & Serv. Co.</u>, 80 F.3d 954, 962 (4th Cir. 1996); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  In applying this standard with respect to the parties' cross-motions for summary judgment in the present case, the Court notes that following the parties' Joint Stipulation, only two claims remain: Plaintiff's claim for judicial review under 38 U.S.C. § 7462, and Plaintiff's claim under the Rehabilitation Act.  The Court will therefore consider each of these claims in turn.

B.      Claim for Review of Agency Action Under 38 U.S.C. § 7462

Plaintiff in her first claim seeks judicial review of what she contends is a final agency action against her.  Specifically, Plaintiff contends that she was never returned to the status quo ante following the Agency's rescission of her removal.  Plaintiff contends that although her salary and grade technically remained the same, she was placed in a new position as a Bed Management Coordinator, which involved far fewer management responsibilities and included far fewer privileges than her position as Associate Chief Nurse.  As such, Plaintiff contends that her transfer to Bed Management Coordinator operated as an effective demotion.  In addition, Plaintiff contends that the Agency has not stricken evidence of the removal from her personnel record, thus hindering Plaintiff's ability to seek employment opportunities in the future.  Based on her contentions, Plaintiff seeks judicial review of the Agency action in this case and asks that the Court find as a matter of law that Plaintiff has never been restored to the status quo ante. In Response, Defendant contends that this claim is not properly before the Court because there

has been no final administrative decision in this case and, as a result, there is nothing for the Court to review.

Plaintiff contends that she is entitled to judicial review pursuant to 38 U.S.C. § 7462. Under § 7462, the Disciplinary Appeals Board ("DAB") has exclusive jurisdiction to review agency action "which arises out of (or includes) a question of professional conduct or competence" or "in which a major adverse action was taken." 38 U.S.C. § 7462(a)(1). Following the DAB's decision, the Secretary of the Veterans Administration ("Secretary") shall execute the decision, reverse the decision, or vacate the decision and remand the matter to the DAB for further consideration. 38 U.S.C. § 7462(d). Should the Secretary execute the DAB's decision, such execution shall be the final administrative action in the case. 38 U.S.C. § 7462(d). Thereafter, an "employee adversely affected by a final order or decision of a Disciplinary Appeals Board (as reviewed by the Secretary) may obtain judicial review of the order or decision." 38 U.S.C. § 7462(f)(1). Under this statute, an employee may only seek judicial review of "a final order or decision of a Disciplinary Appeals Board (as reviewed by the Secretary)." When judicial review is sought under this subsection, "the court shall review the record and hold unlawful and set aside any agency action, finding, or conclusion found to be--(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) obtained without procedures required by law, rule, or regulation having been followed; or (C) unsupported by substantial evidence." 38 U.S.C. § 7462(f)(2).

Plaintiff contends that the Agency's rescission of Plaintiff's removal and alleged failure to restore Plaintiff to the status quo ante following the rescission constitutes a major adverse

action entitling her to judicial review and relief from this Court. Plaintiff acknowledges that neither the DAB nor the Secretary has reviewed or rendered a final decision on any alleged action by the Agency related to the present matter. In her Second Amended Complaint, Plaintiff specifically concedes that there was "no Final Agency Decision." However, Plaintiff contends that even without such review and/or final decision by the DAB and the Secretary, Plaintiff is entitled to judicial review by this Court because the Agency's action of rescinding Plaintiff's removal prior to the DAB hearing effectively barred Plaintiff from fully pursuing her administrative remedies under 38 U.S.C. § 7462. As such, Plaintiff contends that the Agency action of rescinding Plaintiff's removal and then reinstating her to a different position constitutes the administrative "final order or decision" in this matter, which the Court has jurisdiction to review pursuant to 38 U.S.C. § 7462(f).

Plaintiff cites Harris v. Department of the Air Force, 96 M.S.P.R. 193 (M.S.P.B. 2004), purportedly in support of Plaintiff's argument, as set out in Plaintiff's Brief, that "if the employee has not been fully restored to the status quo ante, an agency's rescission of the personnel action during the pendency of an administrative appeal will be in error and the proper subject of judicial review." (Pl.'s Br. 5). In Harris, an agency purported to cancel a removal action against the appellant prior to a hearing before the Merits System Protection Board ("the Board"). Harris, 96 M.S.P.R. at 195. As a result, the administrative judge, deciding for the Board, found that the agency had rescinded the removal action, and dismissed the appeal for lack of Board jurisdiction. Id. On appellant's petition for review, the Board remanded to the administrative judge, finding that the Board retained jurisdiction to review a removal action

where the agency's purported rescission of that removal was not complete. Id. at 195-96. In the present case, Plaintiff contends that by allegedly failing to return her to the status quo ante, the Agency has failed to completely rescinded the removal action, and therefore Harris provides for judicial review of the Agency's action.

Defendant, in response, argues that there exists no legal support for Plaintiff's contention that the Agency's action of rescinding Plaintiff's removal can be construed as the final administrative action under 38 U.S.C. § 7462, or that this Court otherwise has jurisdiction to review the Agency's action in this case. With regard to Plaintiff's contention that Harris controls the present case, Defendant contends that while Harris may serve to define the jurisdiction of the Merit System Protection Board for employees protected by Title 5 of the United States Code,[5] Harris "is inapposite to the analysis of district court jurisdiction under 38 U.S.C. § 7462." (Def.'s Resp. 9-10). Defendant contends that Title 38, which sets forth protections for Plaintiff as a VA-appointed employee, provides a more narrow protection scheme than does Title 5, and that the Title 38 statutory scheme would not allow Plaintiff to circumvent the administrative review process and seek judicial review by the Court at this time. Defendant notes that under 38 U.S.C. § 7462, the DAB has exclusive jurisdiction to review a major adverse action, after

_____

[5] The Civil Service Reform Act, set out in Title 5 of the United States Code, includes general provisions applicable to civil service employees of the federal Government, with appeal of certain personnel actions to the Merit System Protection Board. In contrast, Sections 7401 and 7462 of Title 38 cover only certain VA employees, such as doctors, nurses, and other similar health care providers employed by the Veteran's Administration, with limited appeal of certain personnel actions to the Disciplinary Appeals Board. See, e.g., Heaney v. United States Veterans Admin., 756 F.2d 1215, 1218-19 (5th Cir. 1985) (comparing provisions of Title 5 applicable to general civil service employees, and provisions of Title 38 applicable to certain VA employees).

which review the Secretary makes the final administrative decision. Defendant contends that the DAB did not review any matter in this case, and as a result, the Secretary provided no final administrative decision. Defendant contends that in these circumstances, Plaintiff has failed to exhaust her administrative remedies and therefore the Court has no administrative decision to review at this time. As such, Defendant contends that the Court does not have jurisdiction to conduct judicial review of any Agency action or grant the relief sought by Plaintiff in her present Motion.

Having considered the evidence presented by the parties, the Court concludes that Plaintiff has failed to present any evidence that the Agency's rescission of her removal during the appeal to the DAB effectively barred any further administrative review of the Agency's actions in this case or prohibited Plaintiff from pursuing further administrative review. Throughout her briefing, Plaintiff contends that the Agency failed to "complete" the rescission of Plaintiff's removal because the Agency allegedly failed to return Plaintiff to the status quo ante. To support that contention, Plaintiff relies heavily on Harris v. Department of the Air Force, which held that the appeals board retained jurisdiction to review an agency's action where the agency failed to "complete" rescission of a prior removal action. Assuming, *arguendo*, that Plaintiff is correct in her assertion that the Agency has failed to "complete" the rescission of Plaintiff's removal, then pursuant to Harris, Plaintiff could have continued to pursue her original appeal with the DAB, even in light of the Agency's attempt to rescind the removal prior to the

DAB hearing.[6]  Plaintiff has failed to present any evidence that she attempted to pursue such an appeal to the DAB.

Furthermore, even assuming, *arguendo*, that the Agency's rescission barred Plaintiff's ability to continue pursuing the appeal of the original removal, Plaintiff claims that she suffered a number of alleged major adverse actions by the Agency following the rescission, at least some of which could have potentially provided a basis for a separate appeal to the DAB.  38 U.S.C. § 7462(a)(1) ("[The DAB] shall have exclusive jurisdiction to review any case . . . in which a major adverse action was taken.").  Section 7461 defines a "major adverse action" to include such agency action as  suspension, transfer, reduction in grade, reduction in pay, or discharge." See 38 U.S.C. § 7461(c)(2).  Plaintiff contends that following rescission of the removal action,

---

[6] Notably, the Board in Harris did not hold, as Plaintiff contends, that an agency's failure to completely rescind a prior removal action permits the plaintiff to bypass all further administrative review and immediately seek judicial review from a district court.  Rather, Harris held that the appeal board retains jurisdiction to continue the administrative review process to its end, even where the appeal is interrupted by a purported agency rescission.  As such, Harris does not, by itself, provide this Court with jurisdiction to conduct judicial review of an agency action prior to a final administrative decision on that matter.  The same is true of the other cases cited by Plaintiff, which address the jurisdiction of the Merit System Protection Board, not the separate question of judicial review by this Court.  See Kerr v. National Endowment for the Arts, 726 F.2d 730 (Fed. Cir. 1984) (addressing the continuing jurisdiction of the Merit Systems Protection Board, not the Court); Coles v. U.S. Postal Service, 101 M.S.P.R. 412 (M.S.P.B. 2006) (discussing the determination to be made by the Merit System Protection Board when an action is canceled); Eikenberry v. Department of Interior, 37 M.S.P.R. 438 (M.S.P.B. 1988) (discussing the determination made by the Merit System Protection Board as to whether an employee has been restored to the status quo ante, not the question of judicial review); Durr v. Department of Veterans Affairs, 99 M.S.P.R. 283 (M.S.P.B. 2005) (discussing review by Merit System Protection Board following agency rescission of action, not judicial review); Currier v. U.S. Postal Service, 72 M.S.P.R. 191 (M.S.P.B. 1996) (discussing jurisdiction of the Merit System Protection Board); Harris v. Department of Transportation, 96 M.S.P.R. 487 (M.S.P.B. 2004) (same).

the Agency placed Plaintiff on administrative absence for an extended period of time and subsequently transferred Plaintiff to the alternate position of Bed Management Coordinator. Plaintiff further contends that such Agency actions resulted in an effective demotion. However, even though Plaintiff contends that such alleged major adverse actions occurred, Plaintiff has failed to present any evidence that she attempted to appeal any of the Agency's post-rescission actions under 38 U.S.C. § 7462. As such, based on the record before the Court, it appears that Plaintiff has not exhausted her administrative remedies to pursue to claim under § 7462.

Finally, and in any event, the Court's ability to entertain this claim is limited by the statute, which expressly provides that an employee may obtain judicial review of "a final order or decision of a Disciplinary Appeals Board (as reviewed by the Secretary)." In this case, Plaintiff herself notes in her Complaint that there has been no decision by the Disciplinary Appeals Board and no review by the Secretary. Because there is no final order or decision for the Court to review at this time, Plaintiff's claim for review under 38 U.S.C. § 7462 is not properly before the Court and must be dismissed. Therefore, Plaintiff's Motion for Summary Judgment on her claim under 38 U.S.C. § 7462 will be denied, and Defendant's Motion for Summary Judgment on that claim will be granted.

C.    Rehabilitation Act Claim

Plaintiff also brings a claim for failure to accommodate an alleged disability, in violation of the Rehabilitation Act of 1973. Section 501(b) of the Rehabilitation Act provides, in pertinent part, that "[e]ach department, agency, and instrumentality . . . shall . . . submit . . . an affirmative action program plan for the hiring, placement, and advancement of individuals with disabilities

in such department, agency, instrumentality, or Institution." 29 U.S.C. § 791(b). To recover under the Rehabilitation Act, Plaintiff must first prove that she is within the Rehabilitation Act's protected class, that is, Plaintiff must prove that she is disabled within the meaning of the Rehabilitation Act. See 29 U.S.C. §§ 791(b), 794(a), (d); Hooven-Lewis v. Caldera, 249 F.3d 259, 266–68 (4th Cir. 2001); Gibson v. Henderson, 129 F. Supp. 2d 890, 897 (M.D.N.C. 2001). If an individual establishes that she is disabled, the Rehabilitation Act then requires her to establish that she is "otherwise qualified" to perform the essential functions of the position with or without reasonable accommodation. Hooven-Lewis, 249 F.3d at 268–69. In making these determinations, the Court also looks to cases decided under the Americans with Disabilities Act ("ADA") because, as the Fourth Circuit Court of Appeals has explained, the "ADA and Rehabilitation Act generally are construed to impose the same requirements due to the similarity of the language of the two acts." Baird v. Rose, 192 F.3d 462, 468 (4th Cir. 1999).

In the present case, in the Second Amended Complaint, Plaintiff contends that she suffers "mentally and physically" and that "the symptoms thereof substantially limits various major life activities of Plaintiff." (Sec. Am. Compl. 27). Plaintiff alleges that "[t]he limitations from physical and mental suffering could be alleviated by Defendant providing to Plaintiff reasonable accommodations, including changing work locations and supervisory relationships" but that the Agency failed to provide such accommodations (Sec. Am. Compl. 28). In considering the evidence presented in support of her claims, the Court notes that Plaintiff has attempted to establish that she suffers from a disability based on notes from her physician opining that she suffers from anxiety and depression and was diagnosed with Post-Traumatic Stress Disorder. Plaintiff contends that the Agency was obligated to provide reasonable

accommodation of this alleged disability, and from the evidence presented, it appears that the accommodation Plaintiff requested was that she be provided with an alternate worksite and different supervisory relationships.

In response, Defendant contends that Plaintiff did not request any reasonable accommodation until after she was assigned to the Bed Management Coordinator Position in January 2009. Defendant further contends that even then, the only accommodation Plaintiff requested was to be able to work at another location without any of the previous supervisory relationships. However, Defendant contends that these requested accommodations were patently unreasonable, and that Plaintiff would not be entitled to an alternate worksite or different supervisors as a reasonable accommodation of her alleged job-related stress. Defendant also notes that Plaintiff was offered multiple other Nurse IV positions at the Salisbury VA, but refused to accept those positions. Therefore, Defendant contends that Plaintiff cannot establish that Agency refused to provide a reasonable accommodation of Plaintiff's alleged disability.

In considering Plaintiff's claims, the Court notes first that an individual is disabled under the Rehabilitation Act if she "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102. In the present case, the Court concludes that Plaintiff has failed to present evidence to even attempt to establish that her stress and anxiety are impairments that substantially limit any major life activity. Specifically, Plaintiff has not presented any evidence or medical records regarding her

alleged disability, nor do her affidavits address the extent of her impairment and its impact on her life activities.[7] Defendant has included in the record a 2007 opinion from Plaintiff's physician opining that Plaintiff could not work for six months, which the Agency accepted and on that basis granted Plaintiff medical leave. Defendant has also presented later statements by Plaintiff and her physician indicating she could work without restrictions, and Defendant has presented a Fitness for Duty Evaluation concluding that Plaintiff was able to work on a full-time basis, but that "alternative reporting relationships or reassignment would be prudent." For purposes of the Rehabilitation Act, the Court notes that it is well-established that the inability to work with particular co-workers or supervisors does not create a substantial limitation on the major life activity of working. See Weiler v. Household Finance Corporation, 101 F.3d 519, 524-25 (7th Cir. 1996) ("The major life activity of working is not 'substantially limited' if a plaintiff merely cannot work under a certain supervisor because of anxiety and stress" and if plaintiff "can do the same job for another supervisor, she can do the job, and does not qualify under the ADA"); Siemon v. AT&T Corp., 117 F.3d 1173, 1176 (10th Cir. 1997) (holding that a mental impairment preventing plaintiff from "working under a few supervisors within the organizational structure of one major corporation . . . is far too narrow to constitute a 'class of jobs.'"); Palmer v. Circuit Court of Cook County Social Service Dep't, 117 F.3d 351, 352 (7th Cir. 1997) ("[A]

_____

[7] The Court notes that Plaintiff has failed to present evidence to attempt to satisfy even the modified standards set out in the ADA Amendments Act of 2008, Pub. L. No. 110-325, which still requires a showing of an impairment that substantially limits one or more major life activities, but which provides that "[t]he definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act" for employment actions taken after its January 1, 2009 effective date.

personality conflict with a supervisor or coworker does not establish a disability within the meaning of the disability law, . . . even if it produces anxiety and depression, as such conflicts often do."). Thus, it appears that Plaintiff has failed to present sufficient evidence to create a genuine issue of fact as to whether she is "disabled" under the Rehabilitation Act.[8]

Moreover, even if Plaintiff could establish that she was disabled under the Rehabilitation Act, the Court finds that Plaintiff has failed to present any evidence of a reasonable accommodation that she requested and was denied. The accommodation that Plaintiff requested was an alternate worksite and reassignment to a position with different supervisors and co-workers to alleviate her stress.[9] A reassignment may be considered a reasonable

---

[8] The Court notes that Defendant has also presented a December 2010 letter from Plaintiff's physician, Dr. McEwan, noting that as of that date, over a year after this suit was filed, Plaintiff's condition had "significantly deteriorated" and that any type of work would be impossible for Plaintiff "given the severity of her depressive symptoms." Dr. McEwan concluded that Plaintiff "continues to suffer from Post Traumatic Stress Disorder, she is not responding to medications alone while continuing to work, and I recommend that she be declared unable to work." (Decl. of Reaves, Ex. 2 [Doc. # 49-1]). If the Court accepted that opinion as sufficient evidence of a disability as of December 2010, then Plaintiff's Rehabilitation Act would still fail, because based on that opinion, Plaintiff could not perform the essential functions of a Nurse IV position.

[9] To the extent that Plaintiff also requested authorized leave for medical reasons, the parties do not dispute that Plaintiff was granted extended paid leave prior to her assignment as Bed Management Coordinator, and that she continued to take paid leave until she exhausted that leave, and that she is now on unpaid leave. In her Second Amended Complaint, Plaintiff does not contend that indefinite absences were a reasonable accommodation that were not provided, nor does Plaintiff contend that she should have remained on paid medical leave indefinitely. In any event, the Rehabilitation Act would not require an employer to provide extended paid leave as a reasonable accommodation. See, e.g., Byrne v. Avon Prods., Inc., 328 F.3d 379 (7th Cir. 2003) (concluding that request for accommodation of indefinite leave was not reasonable). Therefore, based on the allegations in the Second Amended Complaint, the Court concludes that Plaintiff's Rehabilitation Act claim is based on her contention that she was not provided with an accommodation based on her request for an alternate worksite and different supervisors and co-workers.

accommodation under the Rehabilitation Act if an employee becomes unable to perform the essential functions of his or her position. However, an employer is not required to provide an aggravation-free or stress-free environment, or to reassign an employee away from any supervisor or coworker who may cause stress or conflict. See Newby v. Whitman, 340 F. Supp. 2d 637, 657-58 (M.D.N.C. 2004). The Court of Appeals for the Third Circuit has also noted that "by asking to be transferred away from individuals who cause him prolonged and inordinate stress, [the plaintiff] is essentially asking this court to establish the conditions of his employment, most notably, with whom he will work. However, nothing in the ADA allows this shift in responsibility. Indeed, nothing in the law leads us to conclude that in enacting the disability acts, Congress intended to interfere with personnel decisions within an organizational hierarchy. Congress intended simply that disabled persons have the same opportunities available to them as are available to nondisabled persons." Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 581 (3d Cir. 1998) (holding that it is "wholly impractical" to require an employer to transfer an employee to another department "whenever he becomes 'stressed out' by a coworker or supervisor")(internal quotations omitted); see also Wernick v. Federal Reserve Bank of New York, 91 F.3d 379, 384 (2d Cir. 1996) (holding that the failure to reassign an employee to a different supervisor did not violate the reasonable accommodation requirement of the ADA and the Rehabilitation Act). In the present case, Plaintiff was given the option of several Acute Care Nurse positions but refused those positions and now alleges that the Agency failed to reasonably accommodate her because it failed to provide an alternate worksite or different supervisory relationships. The Court finds as a matter of law that Plaintiff's requested accommodation was

not reasonable, and Plaintiff has failed to present any evidence to establish that she requested an accommodation under the Rehabilitation Act that was reasonable, or that the Agency failed to provide a reasonable accommodation in the circumstances alleged.

Finally, the Court notes that Plaintiff's Complaint does not contend that her initial removal in 2007 was based on disability discrimination. To the extent Plaintiff may be attempting to raise a Rehabilitation Act claim based on the 2007 removal, Defendant contends that Plaintiff did not suffer from any disability prior to her removal in 2007, and that her supervisors were not aware of her disability until after the removal decision had been made and communicated to Plaintiff, after which Plaintiff requested medical leave based on her doctor's opinion that she was unable to work. Plaintiff has not attempted to present any evidence to establish that her 2007 removal was based on disability discrimination in these circumstances.[10] Therefore, it appears that there is no genuine issue to support any claim that the removal decision was based on disability discrimination.[11]

III.    CONCLUSION

Based on the evidence presented, the Court concludes that Plaintiff cannot establish either of her two remaining claims in this case. As discussed above, Plaintiff's claim for judicial

---

[10] Moreover, even if Plaintiff's supervisors were aware of her disability at the time they made the removal decision, Defendant has presented evidence of a legitimate, non-discriminatory reason for making the removal decision, based on the fact finding investigation, and Plaintiff has not presented any evidence to establish that this proffered reason was just a pretext for disability discrimination.

[11] To the extent that Plaintiff may contend that her stress-related condition was caused by the Agency's removal action, that was the subject of Plaintiff's Worker's Compensation claim, and is separate from any Rehabilitation Act claim.

review under 38 U.S.C. § 7462 is not properly before the Court because there has been no final agency decision for this Court to review, and Plaintiff has failed to exhaust her administrative remedies to obtain a final agency decision. With respect to Plaintiff's claim under the Rehabilitation Act, Plaintiff has failed to present sufficient evidence of a disability, and even if she could establish a disability, the accommodation she requested, that is, an alternate worksite and different supervisory relationships to alleviate job-related stress, was not a reasonable accommodation that the Agency was required to provide under the Rehabilitation Act. Therefore, Plaintiff's Motion for Summary Judgment will be denied and Defendant's Motion for Summary Judgment will be granted as to these two remaining claims.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment [Doc. # 42] is DENIED and Defendant's Motion for Summary Judgment [Doc. # 64] is GRANTED as to Plaintiff's claims under 38 U.S.C. § 7462 and the Rehabilitation Act. IT IS FURTHER ORDERED that, all other claims having been dismissed by Joint Stipulation of the parties, any pending trial motions are DISMISSED AS MOOT and this matter is CLOSED.

A Judgment consistent with this Order and Memorandum Opinion will be entered contemporaneously herewith.

This, the 27th day of January, 2012.

United States District Judge